# Cope et al. v. Northup et al.

(Decided Oct. 11, 1935.)

GRANNIS BACH for appellants.
HENRY L. SPENCER for appellees.

OPINION OF THE COURT BY MORRIS, COMMISSIONER—
Affirming.

On March 10, 1928, Albert Northup conveyed a tract of land to Louise Cope, wife of appellant Scott Cope, for $4,000, one-fourth cash, a note executed for the balance, its payment being secured by vendor's lien. By a payment, not clearly shown in the record, this note was reduced by a credit of $40, leaving due $2,960; but it will be referred to as the $3,000 note.

Some time thereafter Albert Northup pledged this lien note to the Hargis Bank & Trust Company to secure the payment of two notes which he owed the bank, one for $1,100, and the other for $700. About August 29, 1932, the bank was pressing Albert Northup for payment of his notes, threatening to sell the Cope note, whereupon William Northup, Albert's father, acting as agent for his son, entered into negotiations with defendants and appellees Taulbee and Turner, looking to and resulting in the payment of the bank's notes.

On December 17, 1932, the appellants filed their petition in equity, making parties defendant William Northup, Taulbee and Turner, and the county sheriff. After alleging such facts as are above recited, they said that on August 23, 1932, William Northup, acting for Albert, entered into an agreement with Taulbee and Turner by which they agreed to and did pay to William Northup $2,500 for the $3,000 Cope note; that it was further agreed that Taulbee and Turner would pay the bank the notes theretofore executed by Albert Northup, then amounting to $1,835, and pay to William Northup the difference between that sum and the

$2,500, when and if they procured title to the Cope land; that the main purpose of Taulbee and Turner in paying the indebtedness and purchasing the $3,000 note was to secure title to the land; that on the day of the agreement the bank transferred and assigned the $3,000 note to Taulbee and Turner, and that as a part of the agreement they would institute a suit on the $3,000 note to enforce its payment; and that it was further agreed that should the Copes pay the note, William Northup would pay Taulbee and Turner the sum of $2,500.

However, William Northup instituted suit in his name against the Copes and obtained a judgment for $2,960 with interest, the court adjudging the land sold to satisfy the debt, and on June 23, 1930, Taulbee and Turner became the purchasers at the sum of $2,001; appraisal having been at $3,000. This sale was confirmed, and on the same day Taulbee and Turner paid William Northup $665.75, which is alleged to be the difference between the Albert Northup debt with the bank and the $2,500 which they had agreed to pay or had paid William Northup for the $3,000 Cope note.

Appellants say they had no defense to the lien note, but that before and after they were sued by William Northup they were informed by Taulbee and Turner that they were the owners of the lien note, and that the only thing they wanted was the land, which was in lien to secure its payment.

They say they relied on the statements of Taulbee and Turner, hence did not defend the suit or attend the sale, which they would have done, and would have bid on the land except for their reliance on the statements alleged. They further pleaded that after the sale and purchase of the land Taulbee and Turner held out to them that they did not expect to recover anything further on said note, and that because of these statements they did not file any exceptions to the commissioner's report of sale; that Taulbee and Turner on November 7, 1930, executed a writing showing that the note had been paid, whereupon the Copes turned the land over to them, together with growing crops. They allege that at the time the land was sold it was worth more than the amount of the lien note. They claim that William Northup was not the owner of the note at the time of the suit to enforce the vendor's lien, but that the

suit and judgment was for the benefit of Taulbee and Turner, and that they were the real owners of the judgment.

The chief complaint is that William Northup on October 13, 1930, wrongfully caused the clerk of the circuit court to issue an execution on his judgment against them, and that the sheriff had under said execution advertised other land of theirs for sale on December 26, 1932. The execution was for the sum of $859.60, interest, costs, and fees, totaling $1,058.96, and they allege ''said Northup was not entitled to said execution nor any execution on said judgment,'' but should it be held that said Northup is the owner of said judgment he would only have been entitled to an execution for $963 as of this date. On their petition they pray: That the court adjudge that William Northup was never the owner of the note, and hence not entitled to execution and that the sheriff be enjoined from doing further service thereon, and that the court order a resale, giving judgment for a less amount than is evidenced by the execution.

The defendants filed both special and general demurrers to the petition, and without waving demurrers the defendants, William and Albert Northup, filed separate answer and plea in abatement.

The defendants pleaded affirmatively that Albert Northup owed the Hargis Bank $1,835; that the bank had advertised the $3,000 lien note for sale; that on August 29, 1929, Taulbee and Turner loaned to William Northup the sum of $1,830, which was used to pay the Albert Northup notes; that the lien note was on that date assigned to William Northup, who then and there agreed to bring suit on the note, and that William Northup agreed with them that they might share in the proceeds from the sale of the land up to $2,500, in the event they did not bid the land in, this as an inducement to make the loan of $1,835, and that William Northup held and owned the remainder of the note to be collected from the Copes if the land did not bring a sum sufficient to pay the entire note; that carrying out the agreement William Northup did bring the suit and obtained judgment in his name for the amount of the note and an order of sale.

They pleaded that the Copes were served with pro-

cess but did not answer or aefend; they pleaded specifically all the steps taken, orders, commissioner's report, and the confirmation thereof, and the fact that no exceptions were taken by the Copes. They also pleaded that Taulbee and Turner bought the property for $2,001, and that the judgment in favor of William Northup was credited by $2,001, and an execution in his favor issued for the balance of the lien debt due. And they pleaded the failure of the Copes to appear and defend that suit as a bar to the suit in which the execution was issued. To this answer the plaintiffs filed a reply, which merely controverted the allegations of the answer.

Proof was taken, the cause was submitted on the pleadings, exhibits, and proof, and the court denying the relief sought, including the injunction, dismissed the petition, from which ruling the plaintiffs excepted and now appeal.

The issues, such as were presented by the pleadings, seem to be that the Copes undertook to charge that a fraud had been practiced on them. They say that Taulbee and Turner were the owners of the $3,000 note, and that William Northup had no authority to bring the suit to enforce the vendor's lien; that being the owners, they misled them by representing that all they wanted was title to the land, which would fully satisfy their claims. The defendants deny this and say that William Northup was the owner of the note; that he foreclosed for the benefit of all parties to make Taulbee and Turner safe on their loan, and salvage what he could for Albert.

The contract, which is specifically referred to in the pleadings and proof, does not assist much in solving the question, as it is somewhat ambiguous or, to say the least, uncertain in its terms.

For the plaintiff below Scott Cope and Turner testified, and for defendants, William Northup, Taulbee, and one other witness gave their version of the transaction.

Wtihout going into detail, it may be said that witnesses for plaintiff stated facts which in a measure substantiated the position of the plaintiff. On the other hand, witnesses for defendants substantiated the position taken by defendants. Thus we see that the

testimony was of a conflicting nature. Certain other circumstances appear from the record as would perhaps lend more color to the testimony of defendants.

The main question of fact in this case. is: Who owned the lien note of $2,960? The appellants say Taulbee and Turner owned it; Taulbee and Turner do not make it at all clear that they owned it; William Northup says it was assigned to him. The suit to enforce the vendor's lien was in his name. The execution was issued for his benefit. If he did own the note, then Taulbee and Turner had no interest in it, and notwithstanding that Taulbee and Turner gave the Copes a receipt for its payment, which from the proof appears to be true, that receipt was not binding on Northup, the owner of the lien note.

The suit which was instituted by Northup against the Copes with all its orders and proceedings was made a part of the record. It is not here. The assigned note it not here, nor is the power of attorney, although agreed to be filed. These exhibits may have thrown some light on the matter; they may have been helpful to the lower court in reaching his conclusions. Not being brought up, they are, of course, of no help to this court.

This suit was apparently predicated on the idea that Taulbee and Turner practiced a fraud on the Copes. That is the only basis on which a suit could have been maintained, and could be thus maintained only on clearly pleaded and proven grounds of fraud or mistake. The pleadings and proof fall far short of a sufficient showing to authorize this court to disturb the lower court's conclusions. If the court dismissed the petition on the grounds pleaded as a bar, it was correct ruling. If he decided it on the facts, we cannot disturb the judgment, though the evidence be so conflicting as to raise a doubt in the minds of this court. A chancellor's finding will not be disturbed on appeal where the evidence is merely conflicting. Blaydes v. Blaydes, 257 Ky. 429, 78 S. W. (2d) 317; Sturgill v. Hensley, 257 Ky. 344, 78 S. W. (2d) 19. Even if doubt exists, the chancellor's opinion should be given great weight. Taulbee v. Campbell, 238 Ky. 165, 37 S. W. (2d) 13; Stege v. Stege's Trustee, 237 Ky. 197, 35 S. W. (2d) 324.

Having these established rules in mind, we can find no reason for disturbing the judgment of the court below.

Judgment affirmed.